UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHERYL PRESCOTT TURNER )<br>in her capacity as Personal Representative )<br>of the Estate of James F. Prescott, Sr., )<br>     )<br>    Plaintiff, )<br>     )   Case No.<br>  v.  )<br>     )<br>RICHARD STACK, )<br>     )<br>    Defendant )| |

## COMPLAINT

Plaintiff Cheryl Prescott Turner, in her capacity as Personal Representative of the Estate of James F. Prescott, Sr. ("James Sr." or "Decedent,") complains against Defendant Richard Stack as follows.

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Cheryl Turner, the daughter of decedent James F. Prescott Sr., is a resident of Portland, Cumberland County, Maine. Ms. Turner was appointed Personal Representative of Mr. Prescott's estate by the Androscoggin County Probate Court on April 30, 2024.

2. Defendant Richard Stack is decedent James F. Prescott's stepson and currently resides in San Diego, San Diego County, California. Defendant Stack was decedent's Power of Attorney from December 28, 2015 until his death on September 18, 2022.

3. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1332(a), as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, excluding interests and costs, exceeds $75,000.00.

4.  This Court can exercise personal jurisdiction over Defendant Mr. Stack pursuant to Maine's long arm statute, 14 M.R.S.A. § 704-A(2), as at a minimum, Plaintiff alleges that her claims against Mr. Stack arise from his transaction of business in Maine, Mr. Stack's tortious acts in Maine and/or the consequences of his tortious actions occurring in Maine and his ownership, use or possession of any real estate in Maine.

5.  Venue in this Court is proper under 28 U.S.C. §1391(b) by virtue of the fact that virtually all of the events and omissions giving rise to Plaintiff Ms. Turner's claims occurred in Maine.

## FACTS COMMON TO ALL COUNTS

6.  James Sr., born January 6, 1941, was 81 years old at the time of his death on September 18, 2022.

7.  James Sr. has four adult children, James F. Prescott Jr., Mark Prescott, Dana Prescott, and Plaintiff Ms. Turner.

8.  James Sr. was widowed at the time of his death. He had been married to Veronica L. Prescott until her death on November 26, 2015.

9.  Defendant Mr. Stack is James Sr.'s stepson, as he is the biological son of Veronica but not James Sr.

10. On December 28, 2015, James Sr. designated Defendant as his Financial Durable Power of Attorney to take effect upon execution.

11. In December of 2015, James Sr. added Defendant as joint owner to his Evergreen Credit Union ("ECU") account (the "Joint Account"). Besides two deposits in December 2015 totaling $2069.98 and one $5,000.00 deposit in September 2016, Defendant did not deposit his own funds into the ECU Account.

12. Veronica died intestate on November 26, 2015. She was survived by her husband James Sr. and Defendant Mr. Stack, her son.

13. On January 22, 2016, Defendant Mr. Stack was appointed the Personal Representative of the Estate of Veronica L. Prescott by the Cumberland County Probate Court.

14. At the time of Veronica's death, she was the sole owner of a certain parcel of real estate in Westbrook, Maine.

15. There was one mortgage on the Westbrook property in Veronica's name only for $45,500.00 given on July 26, 1999 (hereinafter "1999 Mortgage").

16. As Veronica passed intestate, pursuant to 18-A Maine Revised Statues (repealed), in effect at the time of Veronica's death in 2015, James Sr. was entitled to a homestead allowance and exempt property totaling $17,000.00 (§§ 2-402, 2-403) plus half of Veronica's remaining estate assets (§2-102(4)).

17. On June 28, 2016, Defendant Mr. Stack, in his capacity as Personal Representative of Veronica's estate, executed a Deed of Sale by Personal Representative for the sale of Veronica's Westbrook, Maine property. The Real Estate Transfer Tax Declaration notes a sale price of $125,000.00.

18. James Sr. never received his share of the proceeds from the sale of Veronica's real property. Upon information and belief, Defendant Mr. Stack misappropriated James Sr.'s share of these funds for his own use and benefit.

19. On August 15, 2016, the 1999 Mortgage for the Westbrook property was discharged.

20. The Estate of Veronica L. Prescott also held an Edward Jones account valued at approximately $35,000.00. Upon Veronica's death, this account was transferred to James Sr.'s Edward Jones portfolio, which then contained four accounts.

21. Veronica and James Sr. also owned a home in Windham as joint tenants. Upon Veronica's death, James Sr. continued to live in the Windham home.

22. On June 21, 2018, James Sr. signed his Last Will and Testament. His Will named Richard Stack as his Personal Representative.

23. Per the express terms of James Sr.'s Will, upon his death Defendant Mr. Stack was to receive $10,000.00 and James Sr.'s remaining funds and assets were to be held in trust for the benefit of Mark Prescott, James Sr.'s son. James Sr. named Defendant Mr. Stack as trustee of this testamentary trust for Mark Prescott.

24. James Sr. had heart and hip health issues in the last year of his life, which required in-home nursing care and food delivered by Meals on Wheels in early 2022.

25. On April 23, 2022, as a result of hip surgery and ongoing medical problems, James Sr. was moved to St. Joseph's Rehabilitation and Residence care facility, in Portland, Maine.

26. James Sr. was never able to move back to his Windham home.

27. Between April 23, 2022 and August 29, 2022, James Sr. was living full-time at St. Joseph's Rehabilitation and Residence care facility. Plaintiff Ms. Turner visited him several times a week throughout this period.

28. On May 18, 2022, Decedent's Edward Jones IRA account was emptied of approximately $33,821.58. After taxes were withheld, a total of $28,748.35 was transferred to an Edward Jones Investment account in James Sr.'s name.

29. On May 18, 2022, Decedent's Edward Jones Investment TOD account had a withdrawal of approximately $22,423.84, which was transferred to an Edward Jones Investment account in James Sr.'s name.

30. On May 18 and 19, 2022, Decedent's Edward Jones IRA account (x6718) was emptied of approximately $45,436.45. After taxes were withheld, a total of $38,620.97 was transferred to an Edward Jones Investment account (x9919) in James Sr.'s name.

31. On May 20, 2022, Decedent's Edward Jones Investment account (x9919) valued at approximately $92,130.66 was emptied and transferred into the Joint Account at Evergreen Credit Union.

32. On July 7, 2022, Defendant Mr. Stack sold Decedent's home in Windham for $335,000.00.

33. The only mortgage on the property at the time was issued on September 25, 2009 for $108,600.00.

34. On July 11, 2022, the Joint Account at Evergreen Credit Union received a deposit of $263,052.76.

35. Upon information and belief, James Sr. also had several valuable personal property items, such as rare coins, rare currency bills, and gold in the Windham home safe. Vehicles, guns, a '65 Harley Davidson motorcycle, tools, John Deere mower, appliances, and antiques believed to be at the Windham home went missing during the time the home was sold.

36. On July 15, 2022, James Sr. designated Plaintiff Ms. Turner as his Power of Attorney for Healthcare.

37. On July 19, 2022, Defendant Mr. Stack withdrew $50,000.00 from Decedent's ECU account by wire transfer.

38. On July 22, 2022, Decedent's Windham 2009 Mortgage was discharged.

39. On August 16, 2022, Defendant withdrew $10,000.00 from the Joint Account at Evergreen Credit Union by wire transfer.

40. On August 29, 2022, James Sr. moved from full-time care at St. Joesph's care facility to a trailer home in Poland, Maine with Plaintiff Ms. Turner. James Sr. depended on Cheryl's fulltime care in their trailer.

41. Within days of moving, James Sr.'s condition worsened significantly and James Sr. was transported to the MaineHealth hospital in Norway, Maine.

42. Soon after going to MaineHealth in Norway, James Sr. moved to the Androscoggin Hospice House in Auburn, Maine. Plaintiff Cheryl Turner slept by his bedside every night.

43. James Sr. passed away on September 18, 2022.

44. In October 2022, Decedent's Edward Jones Investment TOD account (x5215) was emptied of approximately $20,000.00. The current location of these funds is unknown but believed to be in Defendant's control.

45. Between June 2022 and October 2022, $32,207.63 was moved from James Sr.'s ECU account to a USAA account in the Decedent's name.

46. On October 13, 2022, Decedent's remaining ECU account balance of $262,498.58 was transferred to a USAA account in Defendant's name.

47. Following James Sr.'s death, Defendant has stated several times that there were no assets in James Sr.'s estate, and thus he would not be initiating the probate process.

48. At all times when Defendant effected the transfer of James Sr.'s funds prior to his death, James Sr. had significant medical and health challenges and was emotionally and physically dependent on others.

49. On April 30, 2024, Plaintiff Ms. Turner was appointed as Personal Representative of the Estate of James F. Prescott, Sr. and given Letters of Authority to administer the Estate.

## COUNT I
### Improvident Transfer of Title
### 33 M.R.S.A. 1021 *et. seq.*

50. Plaintiff repeats and realleges all allegations set forth in the paragraphs above.

51. From December 2015 until his death, James Sr. was an elderly person who was dependent on others, as contemplated by 33 M.R.S.A. § 1022(1).

52. Defendant sold Veronica's Westbrook home and took the entire amount of the proceeds, rather than distributing the required homestead allowance, exempt property and half the probate assets to James Sr., as owed to him under Maine intestate law.

53. Defendant withdrew from three of the Edward Jones accounts (x0619, x5215, x6718) in James Sr.'s portfolio for an after-tax value of $92,130.66, transferred that amount to James Sr.'s ECU account, then transferred the full amount of the ECU account to Defendant with no consideration paid to James Sr. by Defendant.

54. Defendant sold James Sr.'s most significant asset, his Windham home, yielding proceeds of approximately $263,052.76, and deposited those proceeds first into James Sr.'s ECU account, and into his own ECU account with no consideration paid to James Sr.

55. Prior to James Sr.'s death, Defendant transferred $60,000 directly to himself with no consideration paid to James Sr.

56. Defendant liquidated another one of James Sr.'s Edward Jones accounts (x 5215) with an approximate value of $20,000.00. The location of the proceeds from this sale are unknown and missing; upon this sale, Defendant paid no consideration to James Sr. regarding this sale.

57. Defendant directed $32,207.63 of James Sr.'s assets to a USAA account in the Decedent's name, but location of the proceeds is unknown and missing.

58. Defendant withdrew the remaining balance of James Sr.'s ECU account, $262,498.58, and transferred those funds to Defendant's own account, with no consideration paid to James Sr. by Defendant.

59. All of the transfers of James Sr.'s assets to Defendant were made in the context of a confidential and/or fiduciary relationship as contemplated by 33 M.R.S.A. § 1022(2)(A) and (B), by virtue of the fact that Defendant was James Sr.'s stepson and because these transfers were made by Mr. Stack in his capacity as James Sr.'s power of attorney or personal representative.

60. James Sr. was not represented by independent counsel with respect to any of the transfers to Defendant.

61. Defendant received the vast majority of James Sr.'s assets upon his death.

62. Based on the foregoing, the transfers of James Sr's assets to Defendant are presumed to be the result of undue influence within the meaning of 33 M.R.S.A. § 1022(1).

63. Based on the foregoing, at a minimum the Estate of James Sr. is entitled to recover the Edward Jones accounts, Evergreen Credit Union accounts, the $17,000.00 homestead allowance, half the sale proceeds of the Westbrook property, all the sale proceeds from the Windham property, and the personal property of James Sr. referenced above.

64. Plaintiff, in her capacity as Personal Representative of James Sr.'s estate seeks the return of these Estate assets, along with any attorney fees and costs incurred in this action pursuant to 33 M.R.S.A. § 1023(2), plus prejudgment interest.

## COUNT II
### Recovery of Estate Property – 18-C M.R.S.A. § 3-709

65. Plaintiff repeats and realleges all allegations set forth in the paragraphs above.

66. As Personal Representative of the Estate of James F. Prescott Sr., Plaintiff is entitled to the possession and control of James Sr.'s property pursuant to 18-C M.R.S § 3-709.

67. Plaintiff seeks recovery from Defendant of James F. Prescott Sr.'s tangible personal property and any assets related to the Edward Jones account, Evergreen Credit Union account, USAA account, Westbrook home, and Windham home's interest therein.

## COUNT III
### TORTIOUS INTERFERENCE WITH EXPECTED LEGACY

68. Plaintiff repeats and realleges all allegations set forth in the paragraphs above.

69. At all relevant times, Defendant maintained a special relationship of confidence and trust with James Sr. in which Defendant maintained a superior position.

70. By virtue of the foregoing, Defendant violated his special relationship of confidence and trust with James Sr. by transferring the vast majority of James Sr.'s assets into the Joint Account or otherwise to himself, and by asserting joint ownership and a right of survivorship in the Joint Account and/or ownership rights in James Sr.'s other assets, in willful contravention of James Sr.'s true intentions which at all relevant times were known to Defendant.

71. As set forth above, by virtue of James Sr.'s Last Will and Testament, his Estate and the true beneficiaries of same had an expectation that they would receive the assets

misappropriated by Defendant to be distributed in accordance with James Sr.'s testamentary wishes.

72. By virtue of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT IV
### Punitive Damages

73. Plaintiff repeats and realleges all allegations set forth in the paragraphs above.

74. At all relevant times, Defendant's conduct in this case was motivated by malice towards Plaintiff and the true beneficiaries of James Sr.'s estate, or was so outrageous that malice is implied as a matter of law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cheryl Prescott Turner, in her capacity as Personal Representative of the Estate of James F. Prescott, respectfully requests that this Court:

A. enter judgement against Defendant for compensatory and punitive damages, pre and post judgment interest, costs and attorney fees; and

B. award Plaintiff such other relief as the Court deems appropriate

## JURY DEMAND

Plaintiff Cheryl Prescott Turner, by and through her attorney, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  September 2, 2025                Respectfully submitted,

/s/ Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS MCDANIEL
& CAMPO LLC, PA
490 Walnut Hill Road
North Yarmouth, ME 04097
(207) 591-5747
*E-mail: tdouglas@douglasmcdaniel.com*

10